## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2:94-CR-20256** |
| **v.** | ) | |
| | ) | |
| **ALICE MARIE JOHNSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

_____

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
## MOTION TO TERMINATE SUPERVISED RELEASE

COMES NOW the United States of America, by and through D. Michael Dunavant, United States Attorney for the Western District of Tennessee, and Stuart J. Canale, Assistant United States Attorney for the Western District of Tennessee, and objects to defendant's pending motion to terminate supervised release.

On June 6, 2018, the defendant was granted an Executive Grant of Clemency by the President of the United States. While the clemency commuted her sentence to time served and granted her immediate release, the President's commutation warrant specifically left intact and in effect her five-year term of supervised release.

The defendant now, after serving only one year of her five-year term, moves pursuant to 18 U.S.C. § 3583 to terminate her supervised release. In seeking this relief, the defendant cites as justification her numerous public appearances around the country since her release and her book entitled "After Life: My Journey From Incarceration To Freedom."

While 18 U.S.C. § 3583(e) allows for modification of terms of supervised release, it also instructs the court to first consider various factors set forth in 18 U.S.C. § 3553(a), including: "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need for the sentence imposed to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.  Section 3583(e)(1) also provides that the Court may, only after considering the factors in Section 3553, terminate the term of supervised release and discharge the defendant if it is satisfied that such action is warranted by the conduct of the defendant and the interests of justice. The Government respectfully submits that, based upon the following factors and considerations, the interests of justice do not warrant the relief sought by the defendant in this case, and therefore strongly objects to the same.

### A. Indictment

The indictment in this case was returned by the grand jury on November 21, 1994.  The defendant, Alice Johnson, was the lead defendant, among 15 others, indicted for a wide ranging narcotics and money laundering organization that operated a large scale drug trafficking pipeline between Houston and Memphis, from approximately June 1991 until September 1994.

At the time of the indictment, this organization represented one of the largest, if not the largest, drug organizations to have ever operated in West Tennessee.  To this day, this organization likely ranks in the top three drug organizations ever prosecuted in this district based upon the amount of Columbian drugs and money that flowed between Houston and Memphis.  In addition to the 16 individuals in the indictment, there were several other separate indictments of individuals involved.   In all, approximately 25 individuals were convicted.   The trial court found the

2

organization responsible for the distribution of approximately **2,000 to 3,000 kilograms of cocaine** during the three-year time period, which had a value of between $50,000,000 and $75,000,000.  Those indicted included an approximate equal number of Columbian nationals living in Houston, Texas and local Memphians.

All the defendants entered guilty pleas prior to trial, with the exception of Curtis McDonald, Alice Johnson, Mittie Palmer and Jerlean McNeal.

### B. Trial

On September 23, 1996, the four individuals went to trial before then United States District Judge Julia Gibbons.  On October 31, 1996, after a 5-week trial, McDonald, Johnson and McNeal were convicted on all counts.  The jury failed to reach a verdict on Palmer.  The defendant, Alice Johnson, was convicted of conspiracy to possess with intent to distribute cocaine; attempted possession of 12 kilograms of cocaine with intent to distribute; attempted possession of 9 kilograms of cocaine with intent to distribute; attempted possession of 75 kilograms of cocaine with intent to distribute; attempted possession of 10 kilograms of cocaine with intent to distribute; conspiracy to commit money laundering; money laundering ($1.5 million); and structuring monetary transactions. It is the Government's position that the defendant testified untruthfully at her trial and has continued to refuse to accept responsibility for her criminal conduct.

### C. Sentencing

The defendant was originally sentenced by then Chief Judge Gibbons to five concurrent terms of life imprisonment, and two additional concurrent terms of 240 months and 60 months respectively. Judge Gibbons also imposed the five-year term of supervised release that is now the subject of this motion. This sentencing came after a multi-week long trial in which the court heard testimony from many witnesses as to the conduct and participation by the defendant in a four-year

long drug and money laundering conspiracy that started in 1991 and ended in 1994. At the sentencing hearing, Judge Gibbons found the defendant to be the leader of this organization and described the defendant as the "quintessential entrepreneur." The court found the defendant to be responsible for the introduction into Memphis, Tennessee of approximately 2,000 to 3,000 kilograms of cocaine.

### D. Post-Conviction

The defendant appealed her conviction to the Sixth Circuit Court of Appeals.  On March 1, 1999, the Sixth Circuit affirmed the defendant's conviction.  *United States v. McDonald*, 173 F.3d 430, 1999 WL 149658 (6th Cir. Mar. 1, 1999) (unpublished).  In addition to her direct appeal, the defendant filed numerous petitions for post-conviction relief, all of which were denied.

### E. Analysis

In receiving a commutation of her life sentence to time served, the defendant has already received an extraordinary remedy. Now, she wishes to gain further extraordinary relief from supervised release, based upon the celebrity status conferred upon her solely by the commutation, and her quest to engage in public speaking engagements about "social justice" and to sell books for personal profit.   This Court should deny the defendant's audacious request.

The defendant is not a low-level offender, and she had ties to a very significant large-scale drug trafficking organization. In fact, as noted herein, the defendant was the leader of this major drug trafficking organization. Based on the large scale of the defendant's crime, termination of supervised release is not appropriate. As stated above, the drug organization led by the defendant was one of the largest to have ever operated in West Tennessee.  The defendant was responsible for the importation of thousands of kilograms of cocaine and the laundering of millions of dollars in drug proceeds.  During one of the sentencing hearings, Judge Gibbons described the evidence

in this case as "overwhelming." Judge Gibbons also stated that the display of absolute arrogance and total disregard for the criminal justice system by the defendants was "unparalleled" in her years as a judge.

Moreover, the defendant throughout her appeal and many post-conviction petitions has never fully accepted her culpability or responsibility.  In a previous petition for relief, the defendant described her conduct as follows: "Facilitated the supply of drugs through the use of my telephone." Although this was the first time the defendant made any acknowledgment of her criminal conduct, she continues to downplay and minimize the role she played in this conspiracy. The defendant was the "kingpin" of this organization, and, as the Court held at sentencing, was responsible for the importation of 2,000 to 3,000 kilograms of cocaine from Columbia.

Distribution of illegal narcotics is not a victimless crime. In order to prevent needless addiction, injury, violence, and death in our communities, federal law enforcement agencies devote significant resources to disrupt and dismantle drug trafficking organizations that deliver this deadly poison to citizens in West Tennessee. The significant sentencing of the defendant as the leader of the organization did just that in this case, including the five-year term of supervised release with all its conditions.  Imposition of the five-year supervised release term, was just and proper.  The supervised release term, moreover, fulfilled the goals of § 3553(a), in that it afforded deterrence to others, protected the public, and avoided unwarranted disparities among defendant's sentence and the sentences for similarly placed defendants.  Indeed, the five-year term continues to further those statutory objectives.

Motivated by greed for money, the defendant engaged in drug trafficking that no doubt harmed countless individuals in Memphis and West Tennessee. Motivated now by continued greed for money, fame, and celebrity, the defendant seeks to throw off the pesky burden of supervised

release which the Court imposed and the President specifically left intact. Despite the fact that the defendant will now financially benefit from her drug trafficking crimes twice over, uninformed members of the public continue to celebrate her criminality, thereby depreciating the deterrent effect of proper and certain consequences under the federal sentencing guidelines. The cognitive dissonance by the defendant is staggering, and her arrogance and disregard for the rule of law and the criminal justice system continue.

With good reason, federal courts have consistently emphasized the immense threat that drug trafficking poses to our society.  For example, the Second Circuit observed: "The drug seller, at every level of distribution, is at the root of the pervasive cycle of drug abuse… Measured thus by the harm it inflicts upon the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank." *Carmona v. Ward*, 576 F.2d 405, 411 (2d Cir. 1978) (internal citation omitted). The Eighth Circuit likewise noted: "These [drug] offenses are at the root of some of the gravest problems facing our country. The 'fruit' of the drug plague is everywhere; it fills our jails, our courts, our streets, and our nurseries." *United States v. Meirovitz,* 918 F.2d 1376, 1381 (8th Cir. 1990). "Accordingly, given that drug dealers themselves sentence many individuals to a lifetime of addiction and dependency, a life sentence for repeatedly dealing drugs cannot be considered disproportionately cruel and unusual." *Id.*  As the Fifth Circuit has commented:

> Except in rare cases, the murderer's red hand falls on one victim only, however grim the blow; but the foul hand of the drug dealer blights life after life and, like the vampire of fable, creates others in its owner's evil image — others who create others still, across our land and down our generations, sparing not even the unborn.

*Terrebonne v. Butler,* 848 F.2d 500, 504 (5th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1020 (1989).

This is the grave crime that the defendant committed, over the course of many years and with great benefit to herself.  The defendant points to her numerous public appearances and the publication of her book as bases for the early termination of the supervised release. Counsel for the United States has witnessed some of these public appearances and read excerpts from her book. The defendant in these public proclamations describes herself as having only participated as "a phone mule" during the course of the conspiracy. It is obvious from a reading of the Sixth Circuit decision upholding the conviction in this case that the defendant continues, to this day, to downplay and minimize her involvement in this case. As noted above, Judge Gibbons found Ms. Johnson to be the leader of this four-year long criminal conspiracy that was responsible for the introduction of up to 3,000 kilograms of cocaine into our city.

In addition to minimizing her participation in this criminal conspiracy, the defendant also publicly refers to herself as a "first time non-violent offender." What the defendant fails to mention and appreciate is that her conviction did not reflect that she was a first time offender. Her offense transpired over the course of four years. It is difficult to imagine a criminal offense lasting continuously over four years as one offense. In fact, as the court record reflects, the defendant was the leader and directly responsible for multiple offenses and occasions in which she imported cocaine into this city.

As to the defendant portraying herself as a "non-violent offender," she fails to mention the effect of the thousands of kilograms of cocaine she imported into this community. How many deaths occurred from the distribution of these drugs in this community? How many lives were destroyed because of these drugs? How many families were torn apart?  Also, the trial testimony showed that the defendant solicited a murder for hire from one of her Columbian suppliers on an individual who had stolen cocaine from one of her shipments. The Sixth Circuit specifically upheld

the admission of this evidence of the murder solicitation.

To this day Ms. Johnson continues to minimize her involvement and fails to accept responsibility for her actions. The interests of justice do not warrant the extraordinary relief of early termination of supervised release.  For these reasons, the Court should deny the defendant's motion.

Respectfully submitted,

D. Michael Dunavant
United States Attorney


By: *s/ Stuart J. Canale*
Stuart J. Canale (TN Bar #12590)
Assistant United States Attorney
167 N. Main Street, Suite 800
Memphis, TN 38103
(901) 544-4231


## CERTIFICATE OF SERVICE

I, Stuart J. Canale, hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court for the Western District of Tennessee via the Court's electronic filing system which has served a copy of the same with the Counsel for the Defendant:

Michael E. Scholl (16284)
200 Jefferson Ave. Suite 1500
Memphis, Tennessee  38103
(901) 529-8500


This the 10th day of July, 2019.


By: *s/ Stuart J. Canale*